Next case is case number 417-0403, State of Illinois v. Rene Walls. For the appellant, we have Ms. Patrice. Is that how you pronounce your name? Yes. Okay, thank you. And for the appellee, Ms. McClain. You may proceed, counsel. May it please the court, counsel. Good afternoon, Your Honor. My name is Simone Patrice, and I'm from the Office of the State Appellate Defender, and I represent the appellant, Rene Walls, in this matter. Your Honor, the real issue in this case was whether Rene had authority to enter Andriana Wood's house. The state's case rested entirely on the uncorroborated and unbelievable testimony of the complaining witness, Andriana. Andriana claimed that Ms. Walls began harassing her several times after charges were filed against her son and Niren. However, Andriana never specified when or where these purported incidents of harassment occurred, and even more relevantly, when she would have the opportunity to give her notice that she was barred from entering her house. The only specific occasion she does identify in this case is that she had the opportunity, that she picked up her keys from Ms. Walls' house. But this was not an angry exchange, and yet she claimed that on this incident, she told Ms. Walls that she was not allowed to enter at this time. Ms. Walls alternatively testified that she was sent to the house based on an unknown report. She did not recognize the house. She did not know that Ms. Andriana Wood lived at the house. And then she called her supervisor as soon as she realized she knew Andriana. She called her supervisor from her car. Your Honor, Ms. Andriana's lawyer has, by all accounts, Ms. Andriana waited at least a week, if not two weeks, to contact law enforcement. Your Honor, she also made incredible claims, such as that Ms. Walls went to her, had been to her house hundreds of times in a mere 8-to-12-month dating relationship that she engaged in with Ms. Walls' son, Niren. This is merely implausible, and my client's testimony that she had only been there once, two years prior, is much more believable. So given the significant credibility issues, Your Honor, and uncorroborated testimony of Andriana, the evidence was insufficient to convict Ms. Walls of felony criminal trespass, or whether it was beyond a reasonable doubt. However, even if Your Honors disagree, at the very least, Your Honors, there was a credibility match between Ms. Andriana Wood's testimony and Ms. Walls' testimony. And that credibility determination should have been for the jury in this case. However, the jury potentially was unable to do that because the court allowed testimony as to DCFS policy on conflict of interest in this case. Could I ask you a question about the evidence here? Was there evidence presented, or from which it could be inferred by the jury, that the defendant, simply because of her work as a DCFS caseworker, had the authority to enter a residence without the express consent of the owner of the residence, in the course of her official duties? No, Your Honor. I don't believe there was any evidence to that effect, especially where the defense counsel, that was not the defense theory of the case. It sort of seems that it's almost presumed that there was that evidence, and that the prosecutor was working backwards and introducing the evidence of the conflicts policy to convince the jury that whatever authority the DCFS investigator did have by way of her job was rescinded, or no longer in effect because of this conflict. Do you understand what I'm saying there? So here I think the primary issue should be centered around whether or not she had previous notice that she was barred, whether or not the minor or child allowed her inside, and that should have been for the jury in this situation. I believe by inserting and arguing that DCFS revoked her authority to enter, that the jury never had the opportunity to make these credibility determinations. I don't believe at any point the defense counsel or my client, when she testified, argued that she had an authority, subsuming Ms. Wood's authority, because there is no authority. There would be no authority in that situation. It's not as if her, by right of the fact that she's an investigator, allows her to enter. It's not as if she's a police officer, Your Honors. Even police officers may probably cause her to enter someone's house. She never, it wouldn't presume the fact that she would just be allowed to barge in and enter someone's house. It is what the prosecutor argued in closing, that whatever authority she had to enter was negated by the fact that there was a conflict of interest that had developed and she no longer had the authority to enter. Yes, Your Honor, but I argue that DCFS policy wasn't relevant to that finding for the jury. The jury should have decided, it should have been squarely before the jury, whether or not Ms. Woods actually had the opportunity or did tell my client this. It's not the state who can assign the defense its theory of the case. I believe it was improper for the state to admit this in its case in chief. I think that's the primary issue here. If the defendant or defense counsel were to insinuate that DCFS authorized my client to enter, regardless of whether Adriana gave or revoked authority, that's not legal authority to enter. I feel like we have to separate whether or not, you know, it's as if there's this mini-trial going on whether or not she violated DCFS conflict of interest policy, and that wasn't the issue before the jury. Authorization from DCFS is not legal authority to enter a home. According to the state, the state argued that the second she knew she was there, so the second she pulled up to the driveway, she did not any longer have authority to enter. It can't be that that's legal authority to enter. So I think that is the problem here. The jury is making a decision based on what the state is saying, that before she even entered the house, as soon as she pulled up to the driveway, she doesn't have authority. And I don't believe that's legal authorization. Is it your position that because of that position that the state took, then the jury didn't really ever decide the issue of whether or not she had been barred from the residence? That's exactly, that is exactly precisely my point, Your Honor, is that the potential, the jury never had the opportunity to make that predatory determination of whether or not Andreana was telling the truth, or whether or not Ms. Woods was telling the truth here. Without any evidence, in contrary, DCFS policy, internal policy, was irrelevant to the charge here. The state was free to make its case without this policy. It couldn't argue. As it did, along with everything else, that she knew she shouldn't have entered, she knew this woman, she knew her house. I believe all of those arguments, we've rebutted those arguments, but they were proper by the state. So, Your Honors, if there are no further questions, I stand on arguing this case for the written brief. And we ask that you reverse Ms. Walsh's conviction and hold off her in a grand jury trial. Thank you, counsel. Ms. McClain. May I please score it? Yes, ma'am. The state is arguing that the issue in this case, whether the defendant had authority to enter, was proven sufficiently. Andreana Woods testified that the defendant did not have permission to enter the residence, and that she had previously told her on several occasions that she was not allowed to enter. This denial of defense authority came from superseding any authority from a daughter by a parent. Defendant's testimony that Andreana did not tell her beforehand that she could not enter the house is not believable, or Andreana had opportunity and cause to do so. The cause of this case concerned defendant's son had been charged with the attempted murder of Andreana. Andreana and Aaron had dated for 8 to 12 months. After Andreana decided to pursue charges against Aaron, defendant came to Andreana's house, defendant's daughter started harassing Andreana, and Andreana's children were harassed. The opportunity in this case, in which Andreana told defendant that she was not allowed in her house, in the first week or so after the incident with Aaron in August of 2015, Andreana told defendant and her daughter several times they were not welcome at her house. Also, in addition, when Aaron was arrested, Andreana's car was at defendant's house, and when Andreana went to get the car, she made it clear that she wanted nothing to do with them and to stay away from her home. Andreana's testimony concerning her interaction with defendant was corroborated by her reaction to the offense. She became physically and emotionally upset. Ms. McClain? I'm sorry to interrupt you. I'd like to ask a question about opening statements. And in opening statements, did the defense attorney indicate that... First, did the defense attorney give an opening? Okay. Yes. All right. In regards to the offense charge, did the defense attorney talk about the issue or the element of authority? The defense counsel said in opening statement that defendant said she was there for the purpose of investigation. That defendant told Andreana, I'm here for the purpose of investigation. Well, did the defense attorney indicate that defendant had authority because the minor child let her in? I believe so. So the defense never indicated that she had authority by virtue of her position with DCFS to enter. Is that correct? I believe defense counsel implied that she had authority to enter because she said, I'm here for the purpose of investigation. I think you're relating how she, according to her testimony, Ms. Wall's testimony, that she tried to explain once the confrontation began why she was there. But I'm talking about specifically the entry. Did the defense take a position that because of her position as a DCFS investigator that she had the authority to enter without the consent of the owner? So why is it then that the evidence of conflicts of interest DCFS protocol is relevant if defendant didn't raise in the opening statement this idea that she's authorized to enter simply due to the fact that she is a DCFS caseworker having been sent to this location? If that wasn't what she was arguing or suggesting in opening statement, how is it then relevant to the issues, the issue of authority? I don't think that every last piece of evidence that's presented has to go straight to the elements of the offenses. And I think in this case, the conflicts of interest evidence goes toward her motivation in going to the house to begin with. And that is relevant to paint a picture of why she's there and all the other issues. Her motivation in this case was to go to the house to harass the witness. And so is the position that because she wanted to harass the witness, she just went there against known DCFS policy? Is that the point? Yes. She went there. She had no legitimate reason for going to Andrea's house once she saw that the car was in the driveway, that she recognized the house from being there hundreds of other times before. She had no legitimate reason for going there. So to explain the reason for going there, the state would show that there's conflict of interest evidence and so that in conjunction with all the harassment evidence, this incident shows that her motivation for going there was to harass the witness. But there's no dispute that she was sent there by her supervisor on an unknown, unknown report. Is that disputed? That's not disputed. So when you say that there was no legitimate reason for her to be there, are you saying that somehow she intervened in the normal dispatch process and got herself into this position where she was able to go to the complaining witness's home? Or wasn't it just a random thing where she was the next one in the queue and then she's assigned and she goes out there? So is it the latter? I believe it's the latter. I believe it's random. But once she's at the driveway and she sees that it's Adriana's house, she should have turned around and not gone in. So she didn't go there to harass her, but then once she got there and realized, oh, this is Adriana's house, I can harass her. That's what you're saying she decided? Yes, that's what I'm saying. Okay. So I believe in this case the conflicts of interest evidence was relevant as a response to defense counsel's opening statement, for example, that the defendant said she was there for the purpose of investigation and also as a response to Adriana's testimony regarding the defendant's statements during the offense that Adriana testified that the defendant said she was there on official business and that she had every right to walk in her home. And the state's evidence established that DCFS would require her to accuse herself if she was not there on official business. So she had told Adriana, if I'm here on official business, this would keep us back. In order for the jury to be aware of what constituted official business, it needed to be apprised of the conflict of interest evidence. The state also argues that this was relevant as going toward the defendant's motive for entering her home. If the defendant had no legitimate reason for entering her home, the evidence established no motive for going to the house of harassment of a witness. Without this evidence, there is an incomplete picture of the defendant's motive in going to the house. Whereas the incident of standing alone might appear accidental, when considered with the evidence of the defendant's prior incidents of harassment of Adriana and the DCFS policy on conflicts of interest, the circumstances suggest that criminal trespass was deliberate and not accidental. This evidence tends to make it more probable that the defendant acted with criminal motivation and less probable that the actions were inadvertent for the product of an instinctive mind. As such, the conflict of interest evidence is very relevant in this case. And that's what the trial court found, and we ask the court to affirm the trial court. Are there any other questions? I don't see any. Thank you, counsel. Any rebuttal? Well, Your Honor, as Justice Harris has pointed out, and as the State concedes, it was this incident, this entire incident, occurred by happenstance. My client did not know she was going to this woman's house. So, and as Justice Harris asked about the defense counsel's opening statement, and I believe you also asked Justice Kugler-White. The defense attorney did state that my client did explain that she was there for a DCFS investigation. And as Justice Kugler-White has pointed out, it's only to explain why she was there in the first place. Because she opened it, she was led in by a minor child, the minor child led her inside, and it wasn't until she saw Andreana in the house that she realized, wow, there's a conflict here, there's a problem here. And she immediately left and called her supervisor within three minutes. Your Honor, it's not persuasive. The State's argument has been said that she used this as an opportunity to harass Ms. Wood into not testifying. It's not persuasive here. And further, I'd argue again that DCFS policy does not have any legal consequence on her legal authority to enter Ms. Wood's residence. It is only relevant, it is frankly irrelevant, and it should not have been admitted in this case. Again, the defendant never argued this theory at trial. The defense counsel's opening statement did not introduce this. It did not get licensed in the State to introduce this in its case in chief over multiple defense interventions. Your Honor, so if there are no further questions, I stand on a move that the State is willing to agree that the State will negotiate the law's conviction outright for at least a little further over one-third of the time. Thank you, counsel. We'll take this matter under advisement and be in recess at this time.